**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT HUNTINGTON**

**M.S.,**

**Plaintiff,**

**v.**

**AMAZON.COM, INC.,**
**a Delaware Corporation,**
**AMAZON.COM SERVICES LLC,**
**a Delaware Limited Liability Company, and**
**JOHN DOE ENTITIES 1-10,**

**Defendants.**

**Civil Action No. 3:23-cv-00046**

**Honorable Robert C. Chambers**

**REPLY IN SUPPORT OF AMAZON'S MOTION TO DISMISS**

The pleaded facts, despite Plaintiff's contentions otherwise, are insufficient to hold Amazon liable for the criminal conduct of a third party. Plaintiff seeks to hold a marketplace that permitted a third party to sell a product with legitimate uses liable for damages caused by the purchaser's illegal use of that product. But permitting a third party to sell a product is not enough to establish proximate cause, even if a bad actor could use the product to surreptitiously record explicit images. Amazon's position is not radical. To the contrary, it is one espoused repeatedly by West Virginia courts. A recent decision by the West Virginia Mass Litigation Panel supports Amazon's arguments that Plaintiff's proximate cause allegations are "too attenuated and remote" to support her claims against Amazon and that Darrel Wells is the "sole proximate cause" of her injuries, because they "would not have occurred" without his actions. Dismissal of all claims is warranted on this basis alone. But even setting proximate cause aside, Plaintiff's claims fail for a variety of other, independently sufficient reasons. Nothing in her opposition changes that.

**ARGUMENT**

**A. Plaintiff's factual allegations are "too attenuated and remote to prove proximate cause" on any of her claims.**

After Amazon filed its motion to dismiss, West Virginia's Mass Litigation Panel confronted a nearly identical question when it granted more than 100 motions to dismiss claims against manufacturers, distributors, and pharmacy defendants in cases alleging they caused infants to develop opioid neonatal abstinence syndrome. Order Regarding Rulings on Mot. to Dismiss, *In re Opioid Litigation*, No. 22-C-9000 NAS (Kanawha Cnty. Cir. Ct. Apr. 17, 2023).[1] There, as here, the "Plaintiffs argue[d] their alleged injuries were foreseeable and, therefore, proximate cause is established" but the court concluded "that Plaintiffs' allegations regarding causation are too attenuated and remote to prove proximate cause." *In re Opioid Litigation*, Order at 8. In fact, the court went further, finding that "Plaintiffs' mothers were the sole proximate cause of Plaintiffs' alleged injuries" because they "would not have occurred unless Plaintiffs' mothers took opioids during their pregnancies." *Id.*[2]

Plaintiff argues that Amazon is "*a* proximate cause" of her injuries because (1) it permitted John Doe Defendants to list the surveillance camera on Amazon.com, (2) one photo in the product listing showed towels hanging from the camera, and (3) Amazon shipped the camera and as a result had at least three opportunities to inspect it. Am. Compl. ¶¶ 8, 13, 18, 21, 25, 29. Even if true (as we assume for purposes of this motion only), these allegations are "too attenuated to prove proximate cause" in the same way the plaintiffs' allegations were in the NAS litigation. *In re Opioid Litigation*, Order at 8. Darrel Wells is the "sole proximate cause" of Plaintiff's injuries because they "would not have occurred" unless he used the surveillance camera he bought to record explicit photos of her. *Id.*

Plaintiff's arguments to the contrary fail. This case could not be less like *Arbogast*. There, the West Virginia Supreme Court reversed judgment as a matter of law because proximate cause should have gone to a jury after "both parties presented strong and conflicting evidence" on the

---

[1] A copy of this order is attached as **Exhibit A**.

[2] The Panel ordered counsel for the defendants to "prepare a detailed proposed order with finding of fact and conclusions of law granting the motions to dismiss … as to all counts in the Complaints" on or before May 17, 2023, so additional detail on the court's reasoning is forthcoming. *In re Opioid Litigation*, Order at 9.

issue and "[t]he conflict between their two positions involve[d] credibility and other factual determinations." *Arbogast v. Mid-Ohio Valley Med. Corp.*, 589 S.E.2d 498, 504 (W. Va. 2003). This decision does not stand for the proposition that proximate cause is always a jury question, but rather that it is where "'reasonable persons could differ.'" *Arbogast*, 589 S.E.2d at 504 (quoting *Brown v. Carvill*, 527 S.E.2d 149, 155 (W. Va. 1998)). Here, however, even assuming every one of Plaintiff's factual allegations is true, reasonable minds could not differ because the allegations are "too attenuated and remote" to find Amazon's action were even *a* proximate cause of her injuries.

Plaintiff next argues (at 7–8) that because Amazon's actions were purportedly a "substantial factor in bringing about [her] injuries," Amazon "is not relieved from liability by the intervening acts of third persons" because those acts were "reasonably foreseeable." This contention ignores that Amazon merely permitted a third party to sell a surveillance camera with many legitimate uses on Amazon.com. Just like the court in *Bertovich* concluded that the alcohol defendants' marketing activities were not a "substantial factor" contributing to underage drinking, Amazon's decision to permit third parties to sell surveillance cameras on Amazon.com is not a "substantial factor" contributing to Wells' illegal use. *See infra*, section C.

Plaintiff lobs one last Hail Mary at the court on proximate cause—claiming (at 8) that the King County Superior Court in Washington recently rejected "the same" argument by Amazon in the context of a case involving a suicide intentionally caused by the ingestion of sodium nitrite sold on Amazon.com. *See* Pl.'s Opp'n Exs. C & D, Docs. 15-3 & 15-4. Setting aside whether that would be relevant even if true, in that case Amazon's proximate cause argument relied on a well-established rule in Washington that suicide is "an independent intervening force" that the defendant is not liable for *unless* the defendant caused the mental state that led to an uncontrollable impulse to commit suicide. *Orcutt v. Spokane Cnty.*, 364 P.2d 1102, 1105 (Wash. 1961); *Arsnow v. Red Top Cab Co.*, 292 P. 436, 441–43 (Wash. 1930). The three pages of Amazon's motion that Plaintiff attaches to their opposition outline an argument under the Washington Product Liability Act, which is fully irrelevant here.

**B. Physical manifestations of emotional injuries are not physical injuries for purposes of Plaintiff's strict liability or negligence claims.**

Plaintiff insists that the physical manifestations of her emotional injuries are qualifying physical injuries for purposes of pleading the tort claims she has alleged. They are not. And the cases she cites do not support her argument that they are.

**i. It is axiomatic that strict liability is available only where personal injury or damage to other property results.**

Plaintiff has not and cannot point to a single case permitting a strict liability claim to go forward in the absence of physical injury or damage to property, because none exist. *See, e.g.*, *Star Furniture Co v. Pulaski Furniture Co.*, 297 S.E.2d 854, 857 (W. Va. 1982) (recognizing that strict liability is available where plaintiff shows physical injury or damage to other property).

Physical manifestations of emotional injuries do not count as physical injuries for this purpose. As discussed in more detail below, the cases Plaintiff cites to show the opposite deal with narrowly defined claims specifically for emotional injuries where plaintiffs present evidence of physical manifestations of that emotional injury to show their emotional distress is "significant and severe" and "not spurious." *See infra*, section B.ii.

**ii. Plaintiff's negligence claim requires proof of physical injury *unless* it is a claim for negligent infliction of emotional distress only, in which case it fails for other reasons.**

"In West Virginia, damages for emotional distress are rarely given when claims allege that a defendant acted negligently and did not cause physical injury." *Sweat v. West Virginia*, 2016 WL 7422678, at *7 (S.D.W. Va. Dec. 22, 2016) (Chambers, J.). The cases Plaintiff cites are relevant to inapplicable exceptions to this rule.

Plaintiff cites two cases that deal with claims for intentional and negligent infliction of emotional distress. *Courtney v. Courtney*, 437 S.E.2d 436 (W. Va. 1993) (IIED); *Marlin v. Bill Rich Constr., Inc.*, 482 S.E.2d 620 (W. Va. 1996) (NIED).[3] Neither is on point.

[3] Plaintiff also cites *Smith v. Animal Urgent Care, Inc.*, 542 S.E.2d 827 (W. Va. 2000). In *Smith*, "the issue presented [was] whether a sexual harassment claim that is limited to emotional harm which lacks any physical manifestation can be said to constitute a 'bodily injury' under the

*Intentional infliction of emotional distress.* First, this is not a negligence claim. Second, in West Virginia, the tort for intentional infliction of emotional distress is the same as the tort of outrage. *Baldwin v. Wells Fargo Fin. Nat'l Bank*, 2017 WL 63026, at *3 (S.D.W. Va. Jan. 5, 2017) (Chambers, J.). Plaintiff's outrage claim fails for the reasons articulated in section E of Amazon's memorandum in support of its motion to dismiss and in section C below.

*Negligent infliction of emotional distress.* Plaintiff's Amended Complaint alleges a general negligence claim. *See* Am. Compl. ¶¶ 31 (alleging what she claims are "physical injuries"). Ignoring that for a moment and assuming Plaintiff limits her negligence claim to one to recover for negligent infliction of emotional distress, evidence of physical injury is not required and physical manifestations of emotional distress can be relevant to proving her claim is "significant and severe" and "not spurious." *See* Syl. pt. 10, *Marlin*, 482 S.E.2d at 638; *Gardner v. E.I. DuPont De Nemours & Co.*, 2001 WL 378276, at *4 (4th Cir. 2001). But even then, West Virginia courts are loathe to award damages for emotional distress without evidence of physical injury. *Sweat*, 2016 WL 7422678, at *7. Consistent with that rule, negligent infliction of emotional distress is a very narrow claim that requires a direct relationship between the defendants' alleged negligence and the Plaintiff's emotional distress. It has been recognized in circumstances like the below, which are not remotely close to the facts alleged here:

- Plaintiffs who watched a close marital or familial relationship get injured by the negligence of another. *Sweat*, 2016 WL 7422678 at *7 (quoting *Heldreth v. Marrs*, 425 S.E.2d 157, 163–68 (W. Va. 1992)).

- Plaintiffs who were in fact exposed to asbestos while working on a construction project through the negligent conduct of another, where that exposure was reasonably foreseeable. Syl. pts. 11 & 12, *Marlin*, 482 S.E.2d at 624–25.

- Plaintiff who was erroneously diagnosed with AIDS through the negligence of various medical professionals who tested him. *Bramer v. Dotson*, 437 S.E.2d 773, 774–75 (W. Va. 1993).

---

[applicable insurance] policy['s] definition of that term." *Id.* at 830. The answer to that question is irrelevant to this one.

Here, Plaintiffs fail to and cannot allege Amazon did anything that directly led to her emotional distress in the same way. All her negligence allegations rest on Amazon's alleged role as the distributor and advertiser of the surveillance camera at issue. *See* Am. Compl. ¶ 37. That is not enough. *See also supra* section A; *infra* section C.

### C. Plaintiff fails to allege facts that support a finding that Amazon owes her a duty, further dooming her negligence claim.

Plaintiff has not alleged adequate factual matter to support a finding that Amazon owed her a duty. Her opposition changes nothing.

#### i. Foreseeability requires the harm to be a "likely"—as opposed to merely possible—consequence of the defendant's actions.

To find a duty based on foreseeability, factual allegations must support a finding that an "ordinary man in the defendant's position, knowing what he knew or should have known, [would] anticipate that harm of the general nature of that suffered was *likely* to result." *Mallet v. Pickens*, 522 S.E.2d 436, 446 (W. Va. 1999) (emphasis added).

Plaintiff's arguments on foreseeability fail because she uses the word in its nonlegal sense to describe mere awareness that harm is possible: the articles Plaintiff cites at footnote 2 establish only that surveillance cameras are sometimes used illegally to surreptitiously record explicit images of people in private spaces. This is both obvious and irrelevant.

*Bertovich* illustrates what is missing from Plaintiff's allegations. In that case, the plaintiffs alleged a conspiracy involving multiple alcoholic beverage companies. Plaintiffs conclusorily alleged that the defendants were liable for losses associated with underage drinking because their marketing efforts "appeal[] to minors" and because they are enriched by sales to and for underage consumers. *Bertovich v. Advanced Brands & Importing Co.*, 2006 WL 2382273, at *1 (N.D.W. Va. Aug. 17, 2006). The court concluded that the harm (underage drinking) was not a "likely" consequence of the defendants' regular marketing activities, and therefore could not be a proximate cause. *Bertovich*, 2006 WL 2382273, at *11. The section Plaintiff quotes recognizes that the result might have been different if those plaintiffs had alleged facts supporting a conspiracy

that involved encouraging "retailers or other legal adults" to obtain alcohol for underage drinkers. *Id.* If plaintiffs had adequately alleged that the defendants affirmatively encouraged minors to illegally obtain and consume their products (by involving retailers or legal adults in their conspiracy to get minors to purchase alcohol), the actions of those minors would be a likely consequence, as opposed to merely possible, and would therefore not break the chain of causation. In other words, the court acknowledged that underage consumers do sometimes obtain alcohol, but found that it broke the chain of causation in the case at issue because it was not a "likely" consequence of the defendants' alleged actions.

Following *Bertovich*, this Court can acknowledge that surveillance cameras are sometimes used to surreptitiously record explicit images of people in private spaces, but still find that Wells' use of the product at issue here breaks the chain of causation. Wells' conduct was not a "likely" consequence of Amazon's alleged actions: permitting a third party to sell a surveillance camera on Amazon.com that included a single photo advertising the product with a towel hanging from it.

**ii. Plaintiff does not allege Amazon took any affirmative actions that could have increased the risk of harm from Wells' criminal conduct.**

Plaintiff next relies on cases that discuss a defendant's duty to—in her words—"avoid increasing risk of harm from criminal conduct." Pl.'s Opp'n at 5 (citing *Wal-Mart Stores E., L.P. v. Ankrom*, 854 S.E.2d 257 (W. Va. 2020) and *Maynard v. Snapchat, Inc.*, 870 S.E.2d 739 (Ga. 2022)). Those cases are distinguishable: they involve defendants whose actions directly created the risk that injured the plaintiff.

In *Wal-Mart v. Ankrom*, the plaintiff brought a negligence action against Wal-Mart after a shoplifter fleeing from Wal-Mart loss prevention employees collided with her in the store causing significant injury. The court recognized that "while a person does not generally have a duty to protect others from the deliberate criminal conduct of third parties, that duty of protection may arise when the person's affirmative actions or omissions have exposed another to a foreseeable high risk of harm from the intentional misconduct." *Ankrom*, 854 S.E.2d at 268 (cleaned up). The court found that the defendants' employees' decision to pursue the shoplifter caused him to flee

erratically and exposed other shoppers, like the plaintiff, to a foreseeable high risk of harm. Because Wal-Mart's actions were a "substantial factor in bringing about injuries," the court further concluded that Wal-Mart's conduct was a proximate cause of plaintiff's injuries. *Id.* at 270.

In *Maynard v. Snapchat, Inc.*, the plaintiff driver was rear-ended by a driver traveling 100 miles per hour while using Snapchat's "speed filter" (which overlays onto a photo or video the speed at which the phone was moving at the time it was taken). The plaintiff sued Snapchat, alleging that the speed filter was negligently designed, in part, by "encourage[ing] its users to drive at excessive, dangerous speeds in violation of traffic and safety laws." *Maynard*, 870 S.E.2d at 744 (cleaned up). The Georgia Supreme Court found that plaintiff "adequately alleged that Snap could reasonably foresee the particular risk of harm from the speed filter at issue here" and as a result, it reversed the lower court's order of dismissal.

In both *Ankrom* and *Maynard*, unlike here, there is a direct line between the defendants' affirmative actions and the plaintiffs' injuries. Defendants' decisions to pursue a fleeing shoplifter and create a speed filter were affirmative actions that directly encouraged or created the risk and rendered the harm plaintiff suffered "likely" instead of merely possible.

Here, however, Plaintiff has alleged no affirmative act by Amazon that conceivably could have created or increased the risk that Wells would secretly videotape Plaintiff in her private bathroom. Plaintiff relies exclusively on the alleged fact that Amazon permitted a third party to sell the surveillance camera through Amazon.com and provided associated logistics services. Plainly, that is not enough.

**iii. Plaintiff cites no statute that creates a duty.**

Plaintiff fails to adequately allege that Amazon violated any laws governing its conduct or that the violation was a proximate cause of her injuries, as is required to impose a duty.

*First*, section 62-1D-4 of the West Virginia Code and 18 U.S.C. § 2512 prohibit the sale of "covert listening devices." Tort claims are not vehicles for plaintiffs to act as deputy attorneys general, policing defendants' compliance with statutes and regulations unrelated to their injuries.

These statutes are intended to prevent surreptitious recording of oral communications, which is not the cause of the injury plaintiff alleges that she suffered. As Amazon pointed out in its motion, Plaintiff alleges only that the camera at issue was *capable* of recording audio. She never alleges that Wells actually recorded audio of her or that he recorded her oral communications. And it is clear that her injuries flow from the fact that Wells captured explicit *images* of her. In West Virginia, a statutory violation can support a rebuttable claim of prima facie negligence only where the injury proximately flows from the violation and the alleged injury is "of the sort the [statute] was intended to prevent." *Reed v. Phillips*, 452 S.E.2d 708, 714 (W. Va. 1994). These statues cannot support a prima facie negligence claim under these circumstances.

*Second*, Plaintiff points again to her conclusory allegation that the surveillance camera at issue is "intended" for sexual exploitation. Plaintiff's conclusion is supported by only one factual allegation: the single photo in the product listing depicting towels hanging from 2 of 3 hook-style cameras. The logical leap between a photo depicting towels hanging from the hook-style camera and a conclusion that the product is intended for sexual exploitation is too great.

* * *

For the reasons articulated here and in Amazon's motion (at 11–13), Plaintiff has not alleged any facts that support a finding that Amazon owed her a duty.

**D. Plaintiff fails to state a claim for a design defect because the alternative, feasible design she alleges would alter a fundamental and necessary characteristic of the product.**

Juries in West Virginia are instructed that, "[t]o prove that a design is defective, [*name of plaintiff*] must prove that there was an alternative, feasible design that eliminated the risk that injured [*him/her*]." *Mullins v. Ethicon, Inc.*, 2016 WL 7197441, at *2 (S.D.W. Va. Dec. 9, 2016) (Goodwin, J.). Unless and until the West Virginia Supreme Court says otherwise,[4] the "inescapable conclusion is that, in a West Virginia strict liability design defect products liability case, a plaintiff must prove that there was an alternative, feasible design—existing at the time of the product's

[4] The Fourth Circuit certified this question to the West Virginia Supreme Court on April 5, 2023. *Shears v. Ethicon, Inc.*, 64 F.4th 556, 558 (4th Cir. 2023).

manufacture—that would have eliminated the risk that injured the plaintiff." *Mullins*, 2016 WL 7197441, at *5. Because a plaintiff must prove there was an alternative, feasible design to establish a right to relief on a design defect claim, a plaintiff must also plead it to "state a claim to relief that is plausible on its face." *See Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009).

Under settled West Virginia law, "an alternative design is not reasonable if it alters a fundamental and necessary characteristic of the product." *Torkie-Tork v. Wyeth*, 739 F. Supp. 2d 895, 900 (E.D. Va. 2010). The question presented here is whether Plaintiff's alternative design—adding to a hidden camera "an audible and/or visible warning or notice to the subject being recorded"—changes a fundamental and necessary characteristic of the product, transforming it into an altogether different product. There can be no reasonable dispute that it does: adding a visible or aural indication that a hidden camera is recording transforms the hidden camera into a camera that is not hidden. The case law cites many examples of situations where the proposed alternative design would obviously transform the product into a different thing altogether. If a plaintiff alleged that his motorcycle was defectively designed because the manufacturer had not added two wheels and a cab, failing to grant a motion to dismiss on this basis would be a ludicrous waste of judicial resources. *See Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 385 (Tex. 1995). That is what Plaintiff asks this Court to do here and it should refuse.

Switching gears, Plaintiff also argues that the surveillance camera at issue here is "defective because it is an illegal product" (relying on state and federal laws related to covert listening devices) and that "[a] product designed to be illegal 'renders the product defective per se.'" Pl.'s Opp'n at 12 (quoting *Zsa Zsa Jewels, Inc., v. BMW of N. Am., LLC*, 419 F. Supp. 3d 490, 509 (E.D.N.Y. 2019)). This is irrelevant to whether Plaintiff has sufficiently pleaded the existence of an alternative, feasible design as required by West Virginia law. But even if it were relevant or somehow relieved Plaintiff of the burden of proving an alternative feasible design in West Virginia, *Zsa Zsa Jewels* has nothing to do with "illegal" products. *Zsa Zsa Jewels* recognized that, under New York law, "a product's noncompliance *with an applicable product safety statute*

renders the product defective per se" where plaintiff is part of the class the legislature intended to protect and "this defect was the cause of their injury." *Zsa Zsa Jewels*, 419 F. Supp. 3d at 509 (emphasis added). Even if New York law applied, the federal and statute statutes criminalizing covert listening devices that Plaintiff relies on here would not constitute product safety statutes.

* * *

Plaintiff has alleged an alternative design that fails as a matter of law because it would alter a "fundamental and necessary characteristic of the product." Because plaintiffs are required to prove there was an alternative, feasible design to establish entitlement to relief on a design defect claim, a failure to do so dooms her claim.

**E. Plaintiff's outrage claim relies on nothing more than "labels and conclusions, and a formulaic recitation of the elements."**

It is irrelevant for purposes of a motion to dismiss that the Amended Complaint alleges "Amazon 'knew' the Spy Camera, 'when used as depicted on Amazon's online retail store, would harm the subject of the recording'" and that Amazon acted "with 'reckless indifference…distributed a criminal tool that was used to abuse and exploit the child.'" Pl.'s Opp'n at 13. These allegations are mere conclusions that cannot defeat a motion to dismiss.

Peeling back the conclusions to look at the factual allegations that might support them, you find that they are based entirely on just five factual allegations (most of which are disputed, but assumed true for this motion only):

- A single photograph in one product listing for a similar product depicts three hook-style cameras with towels hanging from two of them. Am Compl. ¶¶ 21, 22, 23, 37,
- The hidden hook-style camera Wells purchased was *capable* of recording sound. Am Compl. ¶
- Amazon inspected the product in accordance with IATA packing Instruction 966 because it is powered by a lithium-ion battery. Am Compl. ¶ 26.
- Amazon had at least three opportunities to inspect the surveillance camera at issue. Am Compl. ¶¶ 13, 19.

- In 2011, United States and international news outlets reported that hidden cameras were being used to record women in bathrooms. Am Compl. ¶ 15.

Plaintiff cannot point to a single case that permits an outrage claim to go forward based on factual allegations like these, because there are none. The tort of outrage reaches only the most "atrocious, intolerable, extreme, and outrageous" conduct directed to the plaintiff. *Travis v. Alcon Lab'ys, Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998) (cleaned up).

There is no doubt that Plaintiff has alleged sufficiently outrageous actions by Wells. But she alleges no conduct *by Amazon* that even comes close to meeting this threshold. Accordingly, Plaintiff's outrage claim must be dismissed as to Amazon.

**F. Plaintiff's conspiracy claim fails with her other tort claims and because she alleges no facts supporting a finding of concerted action to accomplish an unlawful purpose.**

To support a conspiracy claim, plaintiffs must allege facts supporting that two or more defendants engaged in concerted action to accomplish an unlawful purpose. *Dixon v. Am. Indus. Leasing Co.*, 253 S.E.2d 150, 152 (W. Va. 1979). But the Amended Complaint fails to allege any facts supporting a conclusion "that Amazon was involved in the design or manufacture of this product, that Amazon played any role in developing or shaping the manufacturer or seller's marketing and promotion of the product, or that Amazon (or the John Doe defendants, for that matter) had any knowledge of Wells' plan for the surveillance camera he purchased." Amazon's Memo. in Supp. of Mot. to Dismiss at 16, Doc. 14. None of the conclusory allegations that Plaintiff points to get her over this hurdle, and her contentions are either irrelevant or based on factual allegations that do not support the conclusion as a matter of law.

The allegations Plaintiff points to (at 13–14) fall into three buckets for purposes of this analysis: (1) allegations that the surveillance camera at issue was specifically intended to surreptitiously record undressed individuals for sexual gratification (bullets 1, 3–6); (2) allegations that the product was part of the Amazon Prime program (bullet 2); and (3) allegations that Amazon conspired with John Doe Defendants to distribute the spy camera (bullet 7).

*Bullets 1, 3–6.* Plaintiff's allegations that the surveillance camera was specifically intended to surreptitiously record undressed individuals for sexual gratification fail. This is a conclusion is

based on a single alleged fact: Plaintiff alleges that one photo in the product listing she viewed depicts towels hanging from the hidden-hook style camera. Am. Compl. ¶ 21. From this, Plaintiff extrapolates that the surveillance camera at issue was intended for use "as a towel hook in a bathroom to secretly record undressed individuals without their consent." The photo is insufficient to support Plaintiff's conclusion as a matter of law, the logical gap between them is too great.

*Bullet 2.* It is not clear why plaintiff believes whether the camera was included in the Amazon Prime program is relevant here. Even if true, it does not support a finding that Amazon acted in concert with any other defendant to accomplish an unlawful purpose.

*Bullet 7.* Plaintiff's bare conclusion that Amazon "conspired" with other defendants is a textbook example of a conclusion that can be ignored for purposes of a motion to dismiss. This conclusion is based on Plaintiff's allegation that Amazon permitted the John Doe Defendants to sell their products through Amazon.com. At most, this supports a conclusion that Amazon and John Doe Defendants agreed to engage in business together, which falls far short of facts supporting concerted action to accomplish an unlawful purpose as a matter of law. *Politino v. Azzon, Inc.*, 569 S.E.2d 447, 451 (W. Va. 2002).

Plaintiff faults Amazon for relying on *Politino*, for the proposition that a "desire to compete and engage in business" cannot be evidence of a conspiracy. Pl.'s Opp'n at 14. Because that case involves a claim that the defendant maliciously intended to destroy another's business, Plaintiff claims that it's irrelevant here where no such claim is leveled.

But Plaintiff misses the point. Plaintiff must support her conspiracy claim with factual allegations that support a finding that Amazon engaged with another defendant or defendants in concerted action *to accomplish an unlawful purpose*. Under *Politino*, a desire to engage in business is not an unlawful purpose and that is true regardless of whether the claim is malicious destruction of a business or some other conspiracy. *Politino*, 569 S.E.2d at 451.

*   *   *

As Amazon argues in its motion (at 15), Plaintiff's conspiracy claim is not a standalone cause of action so it fails with her other tort claims. And even if one of those tort claims survives, her conspiracy claim still fails because she has not alleged facts supporting a conclusion that Amazon engaged in concerted action with anyone else to accomplish an unlawful purpose.

### G. Plaintiff fails to allege racketeering activity.

Plaintiff points out that the plain language of the obscenity statutes criminalizes the mailing of products designed for "immoral or indecent use" or of "immoral or indecent character," and argues that language makes Amazon's conduct "indictable" under these statutes and saves her RICO claim from dismissal. Pl.'s Opp'n at 15–17. She claims Amazon's argument in favor of dismissal of the RICO counts proceeds from a "false premise" that these statutes reach obscenity only.

But Amazon's so-called "false premise"—reading "immoral" and "indecent" as coextensive with "obscene"—comes directly from a 1973 decision of the United States Supreme Court. In *United States v. 12 200-ft Reels of Super 8mm. Film*, 413 U.S. 123 (1973), the Court said that when faced with a challenge that raised "serious doubt" as to vagueness they would construe the words "indecent" and "immoral" in section 1462 to reach only the "patently offensive representations or descriptions of that specific 'hard core' sexual conduct given as examples in *Miller v. California*," 413 U.S. 15, 25 (1973). *12 200-ft Reels of Super 8mm. Film*, 413 U.S. at 130 n.7.[5] In other words, the Supreme Court recognizes that these words are unconstitutionally vague

---

[5] The footnote is reproduced in its entirety below:

> We further note that, while we must leave to state courts the construction of state legislation, we do have a duty to authoritatively construe federal statutes where "a serious doubt of constitutionality is raised" and "a construction of the statute is fairly possible by which the question may be avoided." *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971) (opinion of White, J.), quoting from *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932). If and when such a 'serious doubt' is raised as to the vagueness of the words 'obscene,' 'lewd,' 'lascivious,' 'filthy,' 'indecent,' or 'immoral' as used to describe regulated material in 19 U.S.C. s 1305(a) and 18 U.S.C. s 1462, *see United States v. Orito*, *supra*, 413 U.S., at 140 n. 1, 93 S.Ct., at

and would limit their reach to obscenity as a result. Indicting an alleged seller or shipper of a surveillance camera under any of the statutes on which Plaintiff rely would certainly raise such a "serious doubt" as to vagueness. Because sections 1461 and 1465 use the same vague language, it is likely that the Supreme Court would apply the same narrowing interpretation to those statutes.

Even if Plaintiff were correct that shipping an "immoral or indecent" device could be indictable under sections 1461, 1462, or 1465, Plaintiff has failed to allege sufficient facts to support a conclusion that the hidden-hook style camera at issue here was "immoral or indecent." "[B]ased on a single photo that appears to show towels hanging from it, Plaintiff alleges that Amazon should have realized that the surveillance camera listed for sale by a third party was specifically intended for use in bathrooms to record undressed individuals." Amazon's Memo. in Supp. of Mot. to Dismiss at 7. That is not enough.

## CONCLUSION

For the reasons articulated above and in its memorandum in support of its motion to dismiss, Amazon respectfully requests the Court dismiss all claims against it with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted this 8th day of May 2023.

Prepared By:

*_/s/ Erik W. Legg_*
Joseph M. Farrell, Jr., Esquire (WVSB #1167)
Erik W. Legg, Esquire (WVSB #7738)
**FARRELL, WHITE & LEGG PLLC**
914 5th Avenue, P.O. Box 6457
Huntington, WV 25772-6457

---

> 2676 n. 1, we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific 'hard core' sexual conduct given as examples in *Miller v. California*, *supra*, 413 U.S., at 25, 93 S.Ct., at 2615. *See United States v. Thirty-Seven Photographs*, *supra*, 402 U.S., at 369—374, 91 S.Ct., at 1404—1407 (opinion of White, J.). Of course, Congress could always define other specific 'hard core' conduct.

*12 200-ft Reels of Super 8mm. Film*, 413 U.S. at 130 n.7.

Telephone: (304) 522-9100
Facsimile: (304) 522-9162
jmf@farrell3.com
ewl@farrell3.com
*Counsel for AMAZON.COM, Inc. and AMAZON.COM Services LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT HUNTINGTON**

**M.S.,**

**Plaintiff,**

**v.**

**Civil Action No. 3:23-cv-00046**

**Honorable Robert C. Chambers**

**AMAZON.COM, INC.,**
**a Delaware Corporation,**
**AMAZON.COM SERVICES LLC,**
**a Delaware Limited Liability Company, and**
**JOHN DOE ENTITIES 1-10,**

**Defendants.**

**Defendants.**

## CERTIFICATE OF SERVICE

I, the undersigned counsel for Defendants, AMAZON.COM, Inc. and AMAZON.COM Services LLC, do hereby certify that the foregoing ***Reply in Support of Amazon's Motion to Dismiss*** has been filed with the Court on this 8th day of May, 2023, using the CM/ECF system, which will serve/send notification of such filing to the following CM/ECF counsel of record:

Ben Salango, Esquire (WVSB #7790)
Christian A. Huffman, Esquire (WVSB #14205)
**SALANGO LAW, P.L.L.C.**
206 Capitol Street, Suite 206
Charleston, WV 25301
ben@salangolaw.com
christian@salangolaw.com
*Counsel for Plaintiff*

L. Lee Javins II, Esquire (WVSB #6613)
David A. Bosak, Esquire (WVSB #11947)
Taylor. M. Norman, Esquire (WVSB #13026)
**BAILEY JAVINS & CARTER LC**
213 Hale Street
Charleston, WV 25301
ljavins@bjc4u.com
dbosak@bjc4u.com

tnorman@bjc4u.com
*Counsel for Plaintiff*

Paul Saluja, Esquire (WVSB #6373)
**SALUJA LAW OFFICES, PLLC**
206 Capitol Street, Suite 400
Charleston, WV 25301
psaluja@salujalaw.com
*Counsel for Plaintiff*

*/s/ Erik W. Legg*
Joseph M. Farrell, Jr., Esquire (WVSB #1167)
Erik W. Legg, Esquire (WVSB #7738)
**FARRELL, WHITE & LEGG PLLC**
914 5th Avenue, P.O. Box 6457
Huntington, WV 25772-6457
Telephone: (304) 522-9100
Facsimile: (304) 522-9162
jmf@farrell3.com
ewl@farrell3.com
*Counsel for AMAZON.COM, Inc. and AMAZON.COM Services LLC*