## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

M. S.,

                Plaintiff,

*v.*                               CIVIL ACTION NO.  3:23-cv-0046

AMAZON.COM, INC.,
a Delaware Corporation,
AMAZON.COM SERVICES LLC,
a Delaware Limited Liability Company, and
JOHN DOE ENTITIES 1-10,

                Defendants.

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint ("Defs.' Mot."). ECF No. 13. The Court **GRANTS IN PART**, **DENIES IN PART** the motion.[1]

### BACKGROUND

Amazon.com, Inc. and Amazon.com Services LLC ("Amazon") operate an online store connecting third-party manufacturers with customers. *See* Amended Complaint ("Am. Compl.") ¶¶ 8–9, 14, 18, 25. Amazon controls what products it sells, manages how products are depicted on its website, and edits product descriptions. *See id.* ¶ 8. Through this control, third-party manufacturers often become "virtually anonymous"—"incentivizing dependence on Amazon's name, input, and control." *Id.*

---

[1] The Court also considered Defendants' Memorandum of Law in Support of Motion to Dismiss on Behalf of Defendants Amazon.com, Inc. and Amazon.com Services LLC ("Defs.' Mem."), ECF No. 14; Plaintiff's Memorandum in Opposition to Motion to Dismiss on Behalf of Amazon.com and Amazon.com Services LLC ("Pl.'s Opp'n"), ECF No. 15; Defendants' Reply in Support Amazon's Motion to Dismiss ("Defs.' Reply"), ECF No. 18; Defendants' Notice of Supplemental Authority in Support of Amazon's Motion to Dismiss ("Defs.' Suppl. Auth."), ECF No. 19; and Plaintiff's Surreply in Opposition to Motion to Dismiss ("Pl.'s Surreply"), ECF No. 23.

John Doe designed an "embedded pinhole camera" disguised as a "mountable hook." *Id.* ¶ 14. The camera is motion-activated and records audio and video to a memory card. *See id.* It does not alert individuals it is recording. *See id.* To sell the camera, John Doe participated in Amazon's "Fulfillment by Amazon" program. *See id.* ¶ 19. The program promises third-party manufacturers "improved visibility" on Amazon's website. *Id.* ¶ 12.[2]

Before selling the camera, Amazon inspected it three times. *First*, Amazon's "Product Safety Team" inspected the camera to ensure it did not "infringe privacy," "surreptitiously record others for sexual purposes," or "create and store child sex abuse material." *Id.* ¶ 10. *Second*, because the camera contained lithium-ion batteries, Amazon's "Dangerous Goods Team" inspected the camera to ensure it complied with IATA Packing Instruction 966. *See id.* ¶¶ 11, 26. *Finally*, Amazon's "Fulfillment by Amazon" program inspected the camera. *See id.* ¶¶ 12, 19.

After these reviews, Amazon approved John Doe's camera for sale. *See id.* ¶¶ 18, 20. Amazon then approved the camera's product description. *See id.* ¶¶ 8, 21–23. The description shows the camera serving as a towel hook with the caption: "It won't attract any attention[:] A very ordinary hook." *Id.* ¶¶ 21.

In 2021, M.S.—a minor—visited the United States as a foreign exchange student. *See id.* ¶ 1. During her stay, she lived with Darrel Wells. *See id.* At some point, Wells ordered John Doe's camera from Amazon's website. *See id.* Amazon shipped the camera from its Fulfillment Center to Wells. *See id.* ¶ 26. Wells installed the camera in M.S.'s private bathroom. *See id.* ¶ 29. Using the camera, Wells captured unsolicited photographs of M.S. *See id.* ¶¶ 29–30. Eventually, M.S. discovered the camera. *See id.*

---

[2] John Doe's identity is unknown. *See* Pl.'s Opp'n at 7 n.3 (detailing M.S.'s efforts to identify John Doe). Although unnamed defendants are disfavored, the Court expects the "true identity" of John Doe to "be discovered through discovery or through intervention by the court." *Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982). A "single interrogatory may be sufficient." *Farmer v. Wilson*, 2014 WL 4629591, at *2 (S.D. W. Va. Sept. 15, 2014).

M.S. sued Amazon and John Doe. Her complaint alleges seven causes of action: (1) Negligence—Amazon, *see id.* ¶¶ 34–39; (2) Strict Products Liability—Amazon, *see id.* ¶¶ 40–48; (3) Negligence—John Doe, *see id.* ¶¶ 49–54; (4) Strict Products Liability—John Doe, *see id.* ¶¶ 55–62; (5) Tort of Outrage—All Defendants, *see id.* ¶¶ 63–66; (6) Civil Conspiracy—All Defendants, *see id.* ¶¶ 67–71; and (7) Racketeer Influenced & Corrupt Organizations Act (18 U.S.C. § 1962), *see id.* ¶¶ 72–78. Amazon moves to dismiss Counts I, II, V, VI, and VII.

## LEGAL STANDARD

A motion to dismiss tests the formal sufficiency of the plaintiff's complaint. *See Rep. Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). While facts alleged in the complaint need not be probable, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if its "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

In its analysis, the Court must accept all factual allegations in the complaint as true, *see id.*, and "draw all reasonable inferences in favor of the plaintiff," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," however, "do not suffice." *Id.* (citation omitted). Still, a complaint may proceed even if "a savvy judge" finds actual proof of its alleged facts "improbable" and recovery "very remote and unlikely." *Twombly*, 550 U.S. at 556.

-3-

## ANALYSIS

### I.    Count I—Negligence

In Count I, M.S. asserts a negligence claim against Amazon. *See* Am. Compl. ¶¶ 34–39. To plead a negligence claim, the plaintiff must allege the defendant owed her a duty, the defendant breached that duty, and that the defendant's breach proximately caused her injuries. *See Jones v. Logan Cnty. Bd. of Educ.*, 881 S.E.2d 374, 383 (W. Va. 2022) (citation omitted).

M.S. pleads these elements. She alleges Amazon owed her a duty to not promote or distribute products that present a "foreseeable and unreasonable risk of harm to others." Am. Compl. ¶ 36. She alleges that despite this duty, Amazon promoted, marketed, sold, and distributed John Doe's camera. *See id.* ¶¶ 19–20. She alleges the camera alongside its product description "encourage[d] criminal conduct" and exposed others "to a foreseeable high risk of harm" when used to record individuals in sensitive locations—its "intended and marketed purpose." *Id.* ¶ 37g. When Wells used the camera "precisely as depicted on Amazon's online retail store," *id.* ¶ 29, M.S. suffered emotional and physical harm, *see id.* ¶¶ 31–32, 39.

These allegations raise a reasonable inference Amazon sold a camera knowing it would be used to record a third party in a bathroom without their consent. *Cf. Kyllo United States*, 533 U.S. 27, 38 (2001) (describing privacy concerns implicated when technology reveals "intimate" details like the "hour each night the lady of the house takes her daily sauna and bath"). At this stage, "nothing more" is required. *Rogers v. Tarbox*, 2023 WL 2842879, at *3 (S.D. W. Va. Apr. 7, 2023) (discussing the low bar for "garden variety negligence claim[s]" at the pleading stage).

In response, Amazon makes three arguments. *First*, Amazon argues it owes no duty to M.S. *See* Def.'s Mem. at 9. *Next*, they argue M.S. fails to establish proximate causation. *See id.*

at 6–8. *Finally*, Amazon argues M.S. fails to cite recoverable damages. *See id.* at 8. The Court considers and rejects each argument in turn.

## A

Start with duty. Duty is the touchpoint of negligence. *See Strahin v. Cleavenger*, 603 S.E.2d 197, 205 (W. Va. 2004). Without it, there is no negligence. *See Speedway LLC v. Jarrett*, 889 S.E.2d 21, 27 (W. Va. 2023) (citation omitted). Generally, a person does not have a duty to protect others from the deliberate criminal conduct of third parties. *See Jones*, 881 S.E.2d at 384 (quoting *Miller v. Whitworth*, 455 S.E.2d 821, 825 (1995)). Yet a duty of protection may arise if the person's "affirmative actions or omissions" expose others "to a foreseeable high risk of harm from the intentional misconduct." *Wal-Mart Stores East, L.P. v. Ankrom*, 854 S.E.2d 257, 268 (W. Va. 2020) (quotation omitted). Foreseeability is key. *See id.*

Amazon argues no affirmative actions or omissions exposed M.S. to a foreseeable high risk of harm from intentional misconduct. *See* Defs.' Mem. at 10. The Court disagrees. According to M.S., Amazon did more than "host an online store that connects buyers and sellers." Defs.' Mem. at 10. Amazon failed to properly inspect John Doe's camera three times— including an inspection by Amazon's Product Safety team tasked with preventing the type of harm alleged here. *See* Am. Compl. ¶ 13; *Ankrom*, 854 S.E.2d at 268–69 (looking to the defendant's conduct in light of its own policies in duty analysis). Despite these inspections, Amazon approved the camera. *See* Am. Compl. ¶ 18. Amazon then exercised control over the camera's product description—including over the photographs encouraging using the camera in a private bathroom as a towel hook. *See id.* ¶¶ 8, 21. Amazon then promoted the camera. *See id.* ¶ 24. Throughout all this, Amazon knew hidden cameras were used to spy on individuals in private spaces. *See id.* ¶¶ 15–16. Collectively, these allegations "permit the inference" Amazon

knew its actions and omissions might expose others to a foreseeable high risk a third party would use the camera exactly as advertised—to surreptitiously record an individual in a private bathroom by using the camera as a towel hook. *Jones*, 881 S.E.2d at 384. This is enough at this stage. *See also Williams v. Bob Barker Co.*, 2023 WL 34545, at *4 (Jan. 4, 2023) (holding allegations of inadequate quality control can support a negligence claim on a motion to dismiss).

Caselaw supports this conclusion. West Virginia courts have yet to apply tort principles to "Amazon's novel business model." *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135, 145 (4th Cir. 2019) (Motz, J., concurring). But the "[a]bsence of precedent is not the absence of law." *Fed. Ins. Co. v. Neice*, 884 S.E.2d 863, 866 (W. Va. 2023) (quoting Arthur L. Corbin, *The Laws of Several States*, 50 Yale L. J. 762, 772 (1941)). When confronted with a question of first impression, the West Virginia Supreme Court of Appeals looks to courts of other jurisdictions "for guidance." *Id.* (quoting *id.*). *See also State ex rel. Summerfield v. Maxwell*, 135 S.E.2d 741, 747 (W. Va. 1964) (similar). So will this Court.

In *Maynard v. Snapchat*, the Supreme Court of Georgia held Snapchat could be held liable for designing and promoting a Speed Filter that tracked how fast users travelled when using the filter. *See* 870 S.E.2d 739, 747 (Ga. 2022). The Court looked to how the Speed Filter "was being used," "who was using it," and when an "injury occurred" when determining whether Snapchat could "reasonably foresee a particular risk of harm from its product." *Id.* at 743. Because Snapchat knew drivers routinely used the Speed Filter while speeding at 100 miles per hour or more, purposefully designed the Speed Filter to "encourage" such behavior, and knew of at least one instance where a driver used the Speed Filter before a crash, Snapchat could not claim surprise when customers used the Speed Filter while speeding. *Id.* at 747. *See also Lemmon v. Snap, Inc.*, 2019 WL 7882079, at *7 (C.D. Cal. Oct. 30, 2019) (holding plaintiffs

asserting a car-crash-related wrongful death claim against Snapchat "sufficiently alleged a duty" owed by Snapchat because the plaintiff's alleged "[car] accidents ha[d] occurred as a result of users attempting to capture [a 100 m.p.h.] Snap" as part of a "game" developed by Snapchat).

Similarly, in *In re Juul Labs, Inc., Marketing, Sales Practices, & Products Liability Litigation.*, the Northern District of California held school districts adequately pled a negligence claim against JUUL Labs for marketing "an addictive product to school-age children, leading to an epidemic of youth vaping and corresponding harms to schools." 497 F. Supp. 3d 552, 658 (N.D. Cal. 2020). The school districts alleged JUUL marketed its vaping device to minors through "social media, young attractive models, websites and networks frequented by teens," and "directly in school[s]." *Id.* at 655. Accepting these facts as true, the Court held it was foreseeable JUUL's "alleged conduct hooked millions of teenagers onto vaping." *Id.* Again, JUUL could not claim surprise when children used their product as advertised. *See id.* at 657. *See also Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 761–62 (N.D. Cal. 2019) (holding the "use and trade of JUULs products among minors was foreseeable" because a "vast amount of social media content organized under JUUL related hashtags" promoted such uses).

Finally, in *Braun v. Soldier of Fortune Magazine*, the Eleventh Circuit held Soldier of Fortune Magazine had a duty to the public for "products" accompanied by advertisements that encouraged criminality. *See* 968 F.2d 1110, 1116 (11th Cir. 1992). There, Soldier of Fortune Magazine allowed Michael Savage to advertise himself as a for-hire mercenary in their magazine. *See id.* at 1112. The ad lauded a "gun for hire" and promised a "professional mercenary" with "[d]iscrete" and "very private" services. *Id.* Someone took Savage on for his offer and Savage killed Richard Braun. *See id.* Braun's children sued. The Eleventh Circuit held Soldier of Fortune Magazine had a "legal duty to refrain from publishing advertisements that

subjected the public . . . to a clearly identifiable unreasonable risk of harm from violent criminal activity." *Id.* at 1114. A "reasonably prudent" entity would have recognized the "clear" risk of harm the advertisement posed and pulled it. Soldier of Fortune Magazine could not claim surprise when someone used a product—Michael Savage—as it was advertised—as a mercenary.

These cases represent variations of the same theme: when a seller promotes a product suggesting a particular use, harms that result from that suggested use are foreseeable. Here, M.S. alleges Amazon approved product descriptions suggesting consumers use John Doe's camera to record private moments in a bathroom. Amazon cannot claim shock when a consumer does just that. *See King v. Kayak Mfg. Corp.*, 387 S.E.2d 511, 522–23 (W. Va. 1989) (recognizing a defendant's "advertising or promotional material concerning the uses of the product are a part of [the] reasonable use[s] of the product") (citing sources).

It is immaterial whether the product description advertised several "legal uses." Defs.' Mem. at 10. All advertised uses are foreseeable uses. *See Fontenot v. Taser Int'l, Inc.*, 736 F.3d 318, 321 (4th Cir. 2013) (holding a product manufacturer can be held liable when it is aware a particular use of its product could lead to harm and nonetheless specifically suggests such use is proper). M.S. alleges the advertisement—approved by Amazon—that accompanied the John Doe camera encouraged consumers to use the camera to capture private moments in a private space. This is a foreseeable use. *See Rochetti v. Lowe's Home Ctrs., Inc.*, 2014 WL 3853425, at *12 (S.D. W. Va. Aug. 5, 2014) (looking to promotional materials to hold using Gorilla Tape on the skin as medical tape was not a foreseeable use). To argue otherwise "strains credulity." *United States v. Boam*, 69 F.4th 601, 610 (9th Cir. 2023) (rejecting argument a hidden camera trained on a bathroom medicine cabinet will not capture nudity). Amazon's shock cannot evade liability.[3]

---

[3] Amazon makes two ancillary arguments in its briefing attacking duty. Neither moves the needle. *First*, Amazon argues no "special relationship" exists between Amazon and customers. *See* Defs.' Mem. at 9. But M.S.'s complaint

**B**

Amazon next attacks causation. They argue M.S. fails to plead sufficient facts demonstrating proximate causation. *See* Defs. Mem. at 6. They stress Wells—not Amazon— "produced" M.S.'s harm. *Id.* (quoting *Spencer v. McClure*, 618 S.E.2d 451, 455 (W. Va. 2005) (per curiam)). After all, it was Wells—not Amazon—who installed John Doe's camera in her private bathroom and surreptitiously recorded her. *See id.*

Negligence requires proof of proximate causation. *See Sergent v. City of Charleston*, 549 S.E.2d 311, 320 (W. Va. 2011). Proximate cause is the "cause which, in actual sequence, unbroken by any independent cause, produced the wrong complained of, without which the wrong would not have occurred." *Webb v. Sessler*, 63 S.E.2d 65, 68 (W. Va. 1950). *Accord Wal-mart Stores East, L.P.*, 854 S.E.2d at 270. Proximate causation is often "difficult to define." *Evans v. Farmer*, 133 S.E.2d 710, 715 (W. Va. 1963). There is no "yardstick by which every case may be measured and fitted into its proper place." *Id.* Instead, proximate causation requires considering "logic, common sense, justice[,] and precedent." *Id.* Each case must be decided on "its own peculiar facts." *Id.* Importantly, a "tortfeasor whose negligence is a substantial factor in bringing about injuries is not relieved from liability by the intervening acts of third parties if those acts were reasonably foreseeable by the original tortfeasor at the time" of the negligent conduct. *Wal-Mart Stores East, L.P.*, 854 S.E.2d at 270 (quotation omitted).

The thrust of M.S.'s complaint is simple: Wells bought a hidden camera from Amazon.com and used it exactly as advertised. *See, e.g.*, Am. Compl. ¶ 22. The causal chain is

---

and motion papers do not stress this theory of liability. *See, e.g.*, Am. Compl. ¶ 36 (relying on a duty to prevent "foreseeable and unreasonable risk[s] of harm to others"); Pl.'s Opp'n at 4–7 (same). The Court, therefore, does not address it. *Second*, Amazon argues neither 18 U.S.C. § 2512 nor W. Va. Code § 62-1D-4 establishes a duty supporting *prima facie* negligence. *See* Defs.' Mem. at 12. Both statutes criminalize the possession and distribution of devices "primarily useful" for covert listening. 18 U.S.C. § 2512(1)(a); W. Va. Code § 62-1D-4(a). Even assuming this argument is correct, M.S. still plausibly alleges Amazon has a duty to avoid exposing others to the criminal acts of third parties because the risks John Doe's camera carried were foreseeable. *See supra* Part I.A.

short. Amazon approved and helped market John Doe's camera. *See id.* ¶¶ 8, 18, 21, 24, 26. Amazon knew the camera's product description suggested using the camera as a towel hook in the bathroom. *See id.* ¶¶ 8, 21. Amazon cannot claim surprise when a consumer uses the camera that way. *See supra* Part I.A. A retailer can expect consumers to use products as advertised. *See King*, 387 S.E.2d at 522 (citing cases); *Livingston v. Isuzu Motors, Ltd.*, 910 F. Supp. 1473, 1496 (D. Mont. 1995) ("Courts have held that a manufacturer's advertisements indicate a use of the product a manufacturer was able to foresee.").

Amazon argues they cannot be held liable for the criminal acts of a third party. *See* Defs. Mem. at 6–7. To be sure, "under ordinary circumstances," individuals can assume "no one will violate the criminal law." *Miller*, 455 S.E.2d at 825 (citation omitted). As such, "willful, malicious, or criminal acts" of third parties, *Youtree v. Hubbard*, 474 S.E.2d 613, 620 (W. Va. 1996), may "jump in" and "break the chain of causation." *Wal-Mart Stores East, L.P.*, 854 S.E.2d at 270. This argument misses the point. It is not simply that Wells used the camera to capture illegal images of a minor. What matters is Wells used the camera "precisely as depicted on Amazon's online retail store." Am. Compl. ¶ 30. This use was foreseeable.

Amazon's reliance on *Bertovich v. Advanced Brands & Importing Co.* is misplaced. There, parents of minors sued alcohol distributors for their advertising and marketing efforts "directed at minors." 2006 WL 2382273, at *2 (N.D. W. Va. Aug. 17, 2006). The Court dismissed the case because the complaint failed to allege any instance where the defendants' "marketing practice[s] led their underage children to purchase and consume alcohol." *Id.* at *9. There was no indication the challenged advertisements depicted minors drinking alcohol. At most, the advertisements "appeal[ed]" to minors. *Id.* at *2. Here, the Court need not guess what

-10-

"effect" Amazon's "marketing practices" had on Wells. *Id.* at *9. It is clear. M.S. alleges Wells used a product "precisely as depicted" online. Am. Compl. ¶ 30.

Amazon's reliance on *In re: Opioid Litigation* fares no better. There, the Kanawha County Circuit Court found birth mothers could not hold opioid manufacturers and distributors liable for birth defects after mothers ingested opioids during their pregnancies. *See* 2023 W.V. Cir. LEXIS 3, at *25 (W. Va. Cnty. Cir. Ct. May 31, 2023). The Court focused on "remoteness"—"a separate and distinct element of proximate causation." *Id.* at *22 (explaining if a defendant's alleged conduct is "too remote" from the alleged harm, proximate cause is not established "regardless of whether the harm was foreseeable"). The Court held the opioid manufacturers and distributors' conduct was "too attenuated and remote" from the alleged birth defects because birth defects could occur "only" after (1) physicians prescribed opioids to birth mothers while they were pregnant; (2) third parties provided illegally obtained opioids to birth mothers; or (3) birth mothers ingested medically prescribed opioids and/or illegally obtained opioids during their pregnancies. *Id.* at *23–*24. These "numerous independent actions of multiple actors over whom" the defendants "had no control defeat[ed] proximate causation." *Id.* at *24. Prescribing doctors and birth mothers had a duty to prevent exposures to opioids—not drug manufacturers. *See id.* at *19. Likewise, the drug manufacturers and distributors could not "prevent" individuals from illicitly diverting or obtaining opioids through illegal conduct after they left control of the drug manufacturers. *Id.* at *20. In short, the defendants' conduct was "multiple steps removed" from the birth mothers' injuries. *Id.* at *23.

M.S.'s theory of liability is not like this sprawling opioid litigation. This is not a case of "numerous independent actions by multiple actors." *In re Opioid Litig.*, 2023 W.V. Cir. LEXIS 3 at *24. The crux of M.S.'s complaint is Amazon worked closely with John Doe to inspect,

market, and distribute John Doe's camera. *See* Am. Compl. ¶¶ 8–9, 13, 18, 20, 23, 26. A consumer then used John Doe's product as advertised and the advertised use harmed M.S. *See id.* ¶ 29. Yes, Amazon did not install the camera in M.S.'s private bathroom or surreptitiously record her. *See* Defs.' Mem. at 6. Wells did. *See* Am. Compl. ¶¶ 29–30. But Wells' use of the camera was foreseeable, *see supra* Part I.A, and not "too remote" from Amazon's alleged conduct, *In re Opioid Litig.*, 2023 W.V. Cir. LEXIS 3 at *24. As such, the Court finds the risk of harm stemming from third parties is not "slight" but expected. *Miller*, 455 S.E.2d at 825. Accordingly, the Court finds M.S. properly alleges proximate causation.

## C

Amazon makes one last pitch. They argue M.S. fails to allege "any physical injury whatsoever." Defs. Mem. at 8. Instead, she suffers physical manifestations of emotional injury. *See id.* The Court rejects this argument.

M.S.'s injuries fall into two buckets. In the first are "acute physical injuries and emotional distress" that developed the day she "discovered" Wells' hidden camera. Am. Compl. ¶ 30. In the second are "ongoing chronic physical and emotional injuries" she "continues to suffer." *Id.* ¶ 31. These include chronic tremors; insomnia; headaches; nausea, hypotension with associated blurred vision, dizziness, and syncope; compulsive overeating; neuroplastic changes; sexual avoidance behavior; and paranoia. *See id.*

Both categories survive a motion to dismiss. A plaintiff must prove injury to succeed on a negligence claim. *See SER Maxxim Shared Servs., LLC v. McGraw*, 835 S.E.2d 590, 595 (W. Va. 2019) (calling injury "essential"). West Virginia courts recognize three types of injuries in tort. *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 688 (W. Va. 1982). *First*, compensable injuries can "accompany or follow an actual physical injury caused by impact upon

the occurrence of the tort." *Id.* (quotation omitted). *Second*, compensable injuries can stem from a "nervous shock" to the plaintiff's system even if there was "no impact and no physical injury at the time" of the tort so long as proximate cause is shown. *Id.* (quotation omitted). *Finally*, compensable injuries can stem from "intentional wrong[s] of the defendant." *Id.* (citing cases).

M.S.'s injuries fall into the second category—they constitute the physical byproduct of a nervous shock. *See Lambert v. Brewster*, 125 S.E. 244, 246, 250 (W. Va. 1924) (permitting recovery in tort for "injuries solely from fright and nervous shock resulting from fright unaccompanied by physical impact"). These "psychiatric injuries" with "physical and bodily effects" are sufficient at this stage. *State ex rel. Maxxim Shared Serv., LLC v. McGraw*, 835 S.E.2d at 598 (holding a plaintiff properly alleged negligence damages by citing psychological injuries with physical and bodily injuries). The "science of today" establishes the "brain can be physically injured solely through an emotional disturbance." *Tackett v. Am. Motorists Ins. Co.*, 584 S.E.2d 158, 169 (W. Va. 2003) (Starcher, J., concurring in part, dissenting in part). If proven, M.S.'s damages are severe. Emotional trauma inflicted during a child's "tender years" has an "indelible effect" from which "they may never recover." *Jonathan R. v. Justice*, 2023 WL 184960, at *7 (S.D. W. Va. Jan. 13, 2023) (quotation omitted).

\* \* \*

In sum, M.S. adequately pleads duty, breach, causation, and harm. Accordingly, the Court **DENIES** Amazon's motion as to Count I.

## II.     Count II—Strict Products Liability

In Count II, M.S. alleges Defendants created, marketed, and distributed a defective product. *See* Am. Compl. ¶¶ 40–48. In West Virginia, defective products fall into "three broad, and not necessarily mutually exclusive, categories: design defectiveness, structural

defectiveness; and use defectiveness arising out of the lack of, or the inadequacy of, warnings, instructions[,] and labels." *Morningstar v. Black Decker Mfg. Co.*, 253 S.E.2d 666, 681 (W. Va. 1979). At its core, a defective product is "not reasonably safe for its intended use." *Id.* at 683.

M.S. presses two theories of defectiveness. *First*, M.S. alleges John Doe's camera is defective because it is an "illegal product" because the "mere sale, possession[,] and distribution" of the camera violates federal and state criminal laws. *See* Pl.'s Opp'n at 12 (citing Am. Compl. ¶¶ 22, 57). *Second*, M.S. alleges the camera is defective because "safer alternative designs" that would have "eliminated" the "risk of injury" were available. Am. Compl. ¶ 43. The camera, for example, could provide an audible and/or visible warning before recording. *See id.* The Court rejects the first theory and withholds judgment on the second.

As to M.S.'s "illegal product" theory, the Court finds M.S. misstates the law. M.S. argues a product designed to be illegal renders the product defective per se. *See* Pl.'s Opp'n at 12 (citation omitted). She cites *Zsa Zsa Jewels, Inc. v. BMW of North America, LLC*, 419 F. Supp. 3d 490 (E.D.N.Y. 2019), for support. There, the Eastern District of New York held a product's "noncompliance with an applicable product safety statute renders the product defective per se" if the plaintiff can show she belongs to the statute's "intended beneficiaries." *Id.* at 509.

*Zsa Zsa Jewels* may correctly summarize New York law. It does not, however, capture West Virginia law. Under West Virginia law, a defendant's noncompliance with safety standards is evidence of defectiveness. *Estep v. Mike Ferrell Ford-Lincoln-Mercury, Inc.*, 672 S.E.2d 345, 356–57 (W. Va. 2008). But evidence of compliance is not "conclusive" of the defect issue. *Id.* (permitting juries to "consider" evidence of compliance with federal safety standards). *See also Johnson v. Gen. Motors Corp.*, 438 S.E.2d 28, 39 (W. Va. 1993) (holding a jury need not find a product safe "merely because" the product "followed" applicable federal safety standards);

-14-

*Campbell v. Boston Scientific Corp.*, 2016 WL 5796906, at *4 (S.D. W. Va. Oct. 3, 2016) (explaining "industry custom"—including compliance with safety standards—is "but one factor" to consider and "not conclusive proof of a reasonable design"). The Court, therefore, rejects M.S.'s "illegal product" theory of liability.

As to M.S.'s "alternative, feasible design" theory, both parties agree M.S. must plead an alternative, feasible design. *Compare* Defs.' Mem. at 13; Defs.' Suppl. Mem. at 9–10 (arguing a plaintiff must plead such a design) *with* Pl.'s Opp'n at 11–12 (recognizing a plaintiff must plead, but not "prove" an alternative design at the pleading stage). The Court is not so convinced.

West Virginia courts are not "crystal clear" on the "alternative, feasible design" requirement. *Nease v. Ford Motor Co.*, 848 F.3d 219, 234 (4th Cir. 2017). Some courts suggest an alternative, feasible design is a pleading requirement. *See Mullins v. Ethicon, Inc.*, 2016 WL 7177441, at *5 (S.D. W. Va. Dec. 9, 2016). Other courts suggest an alternative, feasible design is simply "one method of showing" a product is not reasonably safe for its intended use. *See* 2011 WL 1990496, at *7 (S.D. W. Va. May 23, 2011). *See also* Philip Combs & Andrew Cooke, *Modern Products Liability Law in West Virginia*, 113 W. Va. L. Rev. 417, 427 (2011) (explaining this issue has received "little attention" from West Virginia courts).

Recognizing this ambiguity, the Fourth Circuit recently asked the West Virginia Supreme Court for guidance. In *Shears v. Ethicon, Inc.*, the Fourth Circuit certified the following question: "[W]hether a plaintiff alleging a West Virginia strict liability design defect claim is required to prove the existence of an alternative, feasible product design—existing at the time of the subject product's manufacture—in order to establish that the product was not reasonably safe for its intended use." 64 F.4th 556, 558 (4th Cir. 2023).

-15-

This certified question is "central to the resolution" of M.S.'s design defect claim. *Knapp v. Am. Honda Motor Co., Inc.*, 2023 WL 3261664, at *1 (S.D. W. Va. May 4, 2023). If an alternative, feasible design is required, the Court must resolve whether M.S.'s alternative design transforms John Doe's camera into an "essentially different product" as a matter of law. *Keffer v. Wyeth*, 791 F. Supp. 2d 539, 549 (S.D. W. Va. 2011). If an alternative design is *not* "essential," the Court need not address the issue. *Shears*, 64 F.4th at 566. M.S. can provide "others sorts of evidence" that demonstrate—"with equal force"—that John Doe's camera is not reasonably safe for its intended use. *Id.* Once submitted, the jury will decide the "reasonableness of an alternative design." *Keffer*, 791 F. Supp. at 549.

Because the certified question is critical to the resolution of M.S.'s claim, the Court withholds judgment on the issue. The parties may proceed to discovery. *See Belville v. Ford Motor Co.*, 13 F. Supp. 3d 528, 534 (S.D. W. Va. 2014) (Chambers, J.) (withholding judgment as to whether a product was "defective" at the motion to dismiss phase because the issue was "better suited for summary judgment or for a jury determination after an adequate time for discovery"). Accordingly, the Court **DENIES** without prejudice Amazon's motion as to Count II. The Court **DIRECTS** the parties to share with the Court a copy of the Supreme Court of Appeal's decision in *Shears v. Ethicon, Inc.* with seven days of its issuance.

## III.    Count V—Tort of Outrage

In Count V, M.S. asserts a tort of outrage claim. *See* Am. Compl. ¶¶ 63–66. She alleges Defendants' "collective conduct" in "designing, manufacturing, offering, promoting, marketing, selling, and distributing" John Doe's camera is "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." Am. Compl. ¶ 65.

To prevail on a tort of outrage claim, a plaintiff must prove (1) the defendant's conduct was "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency;" (2) the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain harm would result from its conduct; (3) the defendant's actions caused the plaintiff to suffer emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that "no reasonable person could be expected to endure it." *Travis v. Alcon, Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998).

Amazon presses two arguments for dismissal. None persuade. *First*, Amazon argues its conduct—taken as M.S. alleges—does not satisfy the high threshold for the tort of outrage. *See* Defs.' Mem. at 14–15; Defs.' Suppl. Mem. at 11–12. The Court disagrees. Although the "extreme and outrageous requirement is a notoriously high burden to meet," *Bourne v. Mapother*, 998 F. Supp. 2d 495, 507 (S.D. W. Va. 2014), it is not impossible to satisfy—especially at the motion to dismiss stage, *see Ali v. Raleigh Cnty.*, 2018 WL 1582721, at *13 (S.D. W. Va. Mar. 29, 2018). Here, M.S. alleges Amazon and John Doe collaborated to market and distribute a hidden camera. *See* Am. Compl. ¶ 65. This collaboration involved Amazon inspecting the camera three times to ensure it would not be used for illegal purposes—including surreptitiously recording others without their consent in private spaces. *See id.* ¶¶ 10–13. Despite these inspections, Amazon approved the camera. *See id.* ¶ 18. Amazon then worked with John Doe to develop the camera's product description. *See id.* ¶ 8. Amazon then approved the image encouraging consumers to use the camera to record happenings in private locations such as bathrooms. *See id.* ¶¶ 8, 21. Amazon then boosted the product's marketing through its Amazon by Fulfillment program. *See id.* ¶ 24. When Wells requested the camera, Amazon shipped it to

him. *See id.* ¶ 26. Throughout it all, M.S. alleges Amazon had "full knowledge" of the camera's expected use. *Id.* ¶ 65. *See also id.* ¶ 23 (similar).

Accepted as true, these allegations depict more than "annoying," "uncivil, "mean-spirited," or "negligent" behavior. *Courtney v. Courtney*, 413 S.E.2d 418, 423–24 (W. Va. 1991). They also present more than a product defect claim. *See Jinn v. SIG Sauer, Inc.*, 2023 WL 2919558, at *20 (S.D.N.Y. Apr. 12, 2023) ("[P]otentially having designed, manufactured, or failed to warn of defects in a product" does "not rise to the outrageous conduct or indecent behavior that a claim of [IIED] requires.") (quotation omitted). They suggest Amazon knew John Doe's camera advertised an illegal use on its platform that was likely to cause harm yet did nothing to prevent it. This alleged conduct could reasonably be considered outrageous.

*Next*, Amazon argues M.S. fails to allege the requisite intent to support a tort of outrage. *See* Def.'s Mem. at 14. The Court disagrees. A plaintiff asserting a tort of outrage claim must allege the defendant "acted with the intent to inflict emotional distress" or "acted recklessly when it was certain or substantially certain emotional distress would result from [its] conduct." *Travis*, 504 S.E.2d at 425. M.S. satisfies this burden. She alleges Amazon "knew" John Doe's camera would "harm the subject of recording" "when used as depicted on Amazon's online retail store." Am. Compl. ¶ 64. In addition, she alleges Amazon acted with "reckless indifference" when it "distributed" John Doe's camera after three rounds of inspection. *Id.* ¶ 65. These allegations satisfy M.S.'s burden at this stage.

* * *

In sum, the Court finds M.S. offers enough factual support to state a tort of outrage claim. *See Baldwin v. Wells Fargo Fin. Nat'l Bank*, 2017 WL 63026, at *3 (S.D. W. Va. Jan. 5, 2017) (permitting a tort of outrage to survive "past the motion to dismiss stage" while simultaneously

expressing skepticism the plaintiff could meet the "high standard" for proving outrageousness "through discovery"). Accordingly, the Court **DENIES** Amazon's motion as to Count V.

## IV.    Count VI—Civil Conspiracy

In Count VI, M.S. asserts a civil conspiracy claim. *See* Am. Compl. ¶¶ 67–71. She alleges Amazon and John Doe "conspired" to "market and distribute a defective product both knew was intended and used for illegal and criminal purposes." *Id.* at ¶ 69.

Amazon presses three arguments for dismissal. None persuade. *First*, Amazon argues Count VI should be dismissed because no underlying tort exists. *See* Defs. Mem. at 15. The Court disagrees. To be sure, civil conspiracy is not a "stand-alone cause of action." *Dunn v. Rockwell*, 689 S.E.2d 225, 259 (W. Va. 2009). It must be based on another underlying tort. *See O'Dell v. Stegall*, 703 S.E.2d 561, 596 (W. Va. 2010). Here, M.S. adequately pleads three torts: negligence, *see* Part I, strict products liability, *see* Part II, and outrage, *see* Part III. A tort of outrage claim—an intentional tort—can support a civil conspiracy claim. *See Jane Doe-1 et al. v. Corp. of President of the Church of Jesus Christ of Latter-Day Saints*, 801 S.E.2d 443, 473 & n.70 (W. Va. 2017) (allowing civil conspiracy claim because plaintiffs also "alleged a conspiracy to commit intentional torts"—including IIED); *Hood v. Farmer*, 2023 WL 1971343, at *11 (S.D. W. Va. Feb. 13, 2023) (same).

*Next*, Amazon argues M.S. fails to adequately plead "the requisite concert of action." Def.'s Mem. at 15. The Court disagrees. Plaintiff alleges Defendants "conspired by concerted action to design, manufacture, promote, market, sell[,] and distribute" John Doe's camera. Am. Compl. ¶ 68. To support this statement, M.S. alleges Amazon works so closely with third-party manufacturers that individual vendors become "virtually anonymous." *Id.* ¶ 9. She alleges Amazon actively helped John Doe shape its marketing and promotion of the camera by

-19-

exercising its authority control over how products are depicted and the content of product listings and descriptions. *See id.* ¶ 8. She alleges Amazon boosted the camera's sales by "funnel[ing]" individuals through specialized algorithms "directly toward" John Doe's camera. *Id.* ¶ 24. Throughout this process, M.S. alleges Amazon knew the camera would be used to surreptitiously record others in private bathrooms. *See id.* ¶¶ 18, 23.

These allegations show more than that Amazon and John Doe "were motivated by a desire to engage in their routine and legitimate business practice." Def.'s Mem. at 16. They raise the raise the inference Amazon and John Doe shared the "malicious purpose" to distribute a product both parties knew would be used to harm others with little attention to the risk the product's distribution posed. *Politino  v. Azzon, Inc.*, 569 S.E.2d 447, 451 (W. Va. 2002).

*Finally*, Amazon argues M.S. fails to plead proximate causation. *See* Defs.' Mem. at 6. This argument is meritless. *See* Part I.C (holding M.S. properly pleads proximate causation).

\* \* \*

In sum, the Court finds M.S. properly alleges a civil conspiracy claim. Accordingly, the Court **DENIES** Amazon's motion as to Count VI.

## V.      Count VII—Racketeer Influenced & Corrupt Organizations Act (18 U.S.C. § 1962)

In Count VII, M.S. alleges Defendants violated 18 U.S.C. § 1962(c) through a pattern of racketeering activity. *See* Am. Compl. ¶ 77. To state a civil RICO claim, M.S. must allege Defendants engaged in, or conspired to engage in, a "pattern of racketeering activity." *U.S. Airlines Pilots Ass'n v. AWAPPA, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (quotation omitted). A "pattern" of racketeering activity includes "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). "Racketeering activity" refers to indictable acts listed in 18 U.S.C.  § 1961(1).

M.S. cites 18 U.S.C. §§ 1461, 1462, and 1465 as predicate acts. *See* Am. Compl. ¶ 75. Section 1461 criminalizes mailing any "obscene, lewd, lascivious, indecent, filthy, or vile article." Section 1462 criminalizes importing any "obscene, lewd, lascivious, or filthy" materials. Section 1465 criminalizes knowingly transporting any "obscene, lewd, lascivious, [] filthy[,] . . . or other matter of indecent or immoral character." By their terms, the statutes are sweeping. Nonetheless, in a series of opinions in the 1960s and 1970s, the Supreme Court construed §§ 1461 and 1462 narrowly to apply only to obscenity. *See Hamling v. United States*, 418 U.S. 87, 114 (1974) (limiting § 1461 to obscenity to avoid a vagueness challenge); *United States v. 12,200 ft. Reels of Super 8 mm. Film*, 413 U.S. 123, 129–30, 130 n.7 (1973) (same with respect to § 1462); *Manuel Enters., Inc. v. Day*, 370 U.S. 478, 482–83 (1962) (plurality op.) ("While in common usage the words have different shades of meaning, the statute since its inception has always been taken as aimed at obnoxiously debasing portrayals of sex."). Although the Supreme Court has not limited § 1465 in the same fashion, lower courts have. *See United States v. Sherpix, Inc.*, 512 F.2d 1361, 1371 (D.C. Cir. 1975) (imposing the "same construction" imposed on § 1461 to § 1465 "in light of" the statute's "similar language"); *United States v. Friedman*, 506 F.2d 511, 515–16 (8th Cir. 1974) (holding § 1465 is not unconstitutionally vague because the "federal obscenity statutes are to be construed to prohibit the interstate transfer of 'hard-core' pornography only). *Cf. United States v. Simpson*, 561 F.2d 53, 59–60 (7th Cir. 1977) (limiting § 1464 to obscene materials only so the word "indecent" present in § 1461 and § 1464 share the "same meaning"). The Court finds no reason to depart from these decisions.

With these decisions in mind, the Court finds a surveillance camera is not obscene—even if hidden. John Doe's camera and its product description do not "appeal[] to the prurient

interest," portray sexual conduct in a "patently offensive way," or lack "serious literary, artistic, political, or scientific value." *Miller v. California*, 413 U.S. 15, 24 (1973).

Of course, the content created by a hidden camera can be obscene. *See, e.g.*, *United States*, 814 F.3d 1246, 1251–53 (11th Cir. 2016) (considering camera's location when deciding whether the images captured by the camera were "lascivious"); *United States v. Johnson*, 639 F.3d 433, 440–41 (8th Cir. 2011) (holding a reasonable jury could find videos of minors weighing themselves in an examination room were "lascivious" based on how the camera used its zoom features to depict the children); *United States v. Schales*, 546 F.3d 965, 974–75 (9th Cir. 2008) (describing video techniques used by a defendant to create "morphed" "obscene pictures of a seven-year old North Carolina girl"). But obscene content does not transform the device used to create it into an obscene product. Obscene content can come from anodyne material. *Cf. Ginzburg v. United States*, 383 U.S. 463, 466 n.5 (1966) (noting a finding of obscenity can be based on the work "as a whole" even though some parts of the work are not obscene). Because the camera is not obscene, Defendants' conduct is not regulated by §§ 1461, 1462, and 1465. M.S. is, therefore, left with no predicate acts and no RICO cause of action.

M.S. responds. She argues the text of the obscenity statutes cover more than just "obscene" materials—each covers "indecent or immoral" materials. Pl.'s Opp'n at 15–17. This misses the point. When precedent mandates a certain interpretation, a district court cannot reinterpret the statute anew. Until the Fourth Circuit or the Supreme Court hold to the contrary, this Court must follow "extant precedent." *King v. United States*, 214 F. Supp. 2d 669, 677 (E.D. Va. 2002). Accordingly, the Court **GRANTS** Amazon's motion as to Count VII and **DISMISSES** Count VII.

**CONCLUSION**

The Court **GRANTS IN PART, DENIES IN PART** Defendants' Motion to Dismiss

Plaintiff's Amended Complaint. The Court **DIRECTS** the Clerk to send a copy of this Order to

counsel of record and any unrepresented parties.

ENTER:        November 30, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE